# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **CLAUDIA VALADEZ** | § | |
| *Plaintiff* | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO. 4:24-cv-02950** |
| | § | |
| | § | |
| **CITY OF JACINTO CITY, TEXAS,** | § | |
| **J.M. AYALA and JOSE JUAREZ-** | § | |
| **AGUILERA, in their individual** | § | |
| **capacities,** | § | |
| *Defendants* | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES **CLAUDIA VALADEZ**, referred to herein as Plaintiff, complaining of Defendants **CITY OF JACINTO CITY, TEXAS and J.M. AYALA and JOSE JUAREZ-AGUILERA,** in their individual capacities under 42 U.S.C. §1983, hereinafter called Defendants, and for cause of action, would respectfully show unto the Court and jury the following:

## I.  NATURE OF THE CASE

**THE CLAIM(S):** City of Jacinto City, Texas police officer Jose Juarez-Aguilera recklessly pursued a stolen vehicle driven by juveniles in the early morning hours of 10 August 2022. His pursuit of said vehicle was conducted recklessly and with deliberate indifference to the plight of Plaintiff. His pursuit of the stolen vehicle violated both the Jacinto City Police Department's *Pursuit of Fleeing Vehicles* policy and the Jacinto City ordinance governing such actions.

This reckless pursuit was the result of negligent training, hiring, retention, or supervision under 42 U.S.C. § 1983. This pursuit also deprived plaintiff of her liberty and property interests, as protected by both the Texas and U.S. Constitutions, viable for redress under 42 U.S.C. §1983.

1

Plaintiff also has a claim under the state-created danger doctrine under 42 U.S.C. §1983 for the deprivation of her rights under the Fourteenth Amendment of the U.S. Constitution. Moreover, such reckless pursuit injured plaintiff in violation of the Texas Tort Claims Act (TTCA).

## II.    PARTIES

1. Plaintiff, **CLAUDIA VALADEZ** is a resident of Harris County, Texas.
2. Defendant **CITY OF JACINTO CITY, TEXAS** is a political subdivision of the State of Texas and the **JACINTO CITY POLICE DEPARTMENT** is an agency operated thereunder.
3. The JACINTO CITY POLICE DEPARTMENT is funded and operated by the JACINTO CITY, TX City Council. Mayor Ana Diaz is the chief executive of JACINTO CITY, TX. Mr. Lon Squyres is the city manager of JACINTO CITY, TX.
4. Mayor Diaz and Mr. Squyres are responsible for implementing the policies and decisions of the JACINTO CITY City Council as the City's primary administrators.
5. Mayor Diaz and the City Council are tasked with appropriating, reviewing, and implementing the JACINTO CITY, TX Police Department budget, policies, procedures, practices, and customs, including the acts and omissions related thereto, at issue in this lawsuit.
6. Defendant **Chief J.M. AYALA** is the Chief of Police of JACINTO CITY, TX and the primary policymaker tasked with creating, implementing, and reviewing the JACINTO CITY, TX Police Department policies, procedures, practices, and customs. He may be served at 10429 Market St., Houston, TX 77029 or wherever he may be found.
7. Defendant **JOSE JUAREZ-AGUILERA** is a police officer employed by the JACINTO CITY, TX Police Department. He may be served at 10429 Market St., Houston, TX 77029 or wherever he may be found.
8. The CITY OF JACINTO CITY, TX may be served by and through Mayor Ana Diaz, at the JACINTO CITY, TX City Hall, 1301 Mercury Dr., Houston, TX 77029 or wherever she may be found.

## III.    JURISDICTION

9.  The subject matter in controversy and damages sought are within the jurisdictional limits of this Court.

10. This Court also has jurisdiction over this suit under 42 U.S.C. § 1983.

11. This Court also has supplemental jurisdiction over the state law claims contained herein, as they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

12. Venue is also appropriate in the Southern District of Texas pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas, which is in the Houston Division of the Southern District of Texas.

## IV.    FACTS AND ALLEGATIONS

13. On 10 August 2022, Claudia Valadez was the unsuspecting victim of a brutal collision when she was struck by a car that was fleeing Jacinto City Police Department officer Sgt. Jose Aguilera.

14. At approximately 3:20 am on the morning of 10 August 2022, Jacinto City Police Officer, Sgt. Jose Aguilera, was on patrol, on information and belief, near the Cinemark Tinseltown Jacinto City, located at 11450 East Freeway, Houston, TX 77029.

15. While on patrol, Defendant Juarez-Aguilera assisted a Galena Park Police Department officer with a call involving a stolen vehicle evading arrest.

16. The Galena Park officer advised Defendant Juarez-Aguilera, on information and belief, that there was another vehicle associated with the suspect previously apprehended for evading arrest.

17. While traveling down Charlie Oates Rd., Defendant Juarez-Aguilera came to a stop at the corner of Charlie Oates Rd. and Market Rd. As he approached that intersection, his "attention was drawn to a gray in color 2002 GMC Sierra pickup bearing a temporary tag."

18. At the time Defendant Juarez-Aguilera initiated the vehicle pursuit to follow, the suspect vehicle did not present a clear and immediate threat to the safety of others.



(ILLUSTRATION A)

19. As the vehicle passed in front of him, Defendant Juarez-Aguilera activated his emergency lights to affect a traffic stop on the vehicle.

20. The vehicle then turned left onto the 1300 block of Jennifer Lane, as Defendant Juarez-Aguilera continue to give chase.



(ILLUSTRATION B)

21. With its turn onto Jennifer Ln., the suspect vehicle entered a heavily-populated, residential neighborhood, as evidenced by the vehicles lining the streets and the driveways as the two vehicles sped through.



(ILLUSTRATION C)

22. Upon entering the heavily-populated neighborhood, the suspect vehicle took a quick right turn, turning onto Horatio St., gaining speed on information and belief.



(ILLUSTRATION D)

23. After turning onto Horatio St., the suspect vehicle – being hotly pursued by Defendant Juarez-Aguilera in his police vehicle – flies by a sign advising, "Road Humps: 10 MPH," a clear sign that a slow speed of travel is demanded on this road and in this area.



(ILLUSTRATION E)

24. Just a little further down the road, the suspect vehicle hits the road humps hard enough to get airborne. Both the suspect vehicle and Defendant Juarez-Aguilera's police vehicle were traveling well in excess of the speed limit at this time, on information and belief.





(ILLUSTRATIONS F-G)

25. As the two vehicles fly down the residential Horatio St. – lined with vehicles and homes – the suspect vehicle continues pulling away from Defendant Juarez-Aguilera, flying over another speed bump.



(ILLUSTRATION H)

26. The suspect vehicle continues gaining speed, on information and belief, as it flies down the road and approaches the stop sign at the intersection of Horatio St. and Munn St. This intersection is essentially a "T," with Horatio St. ending as it meets Munn St. Continuing

to travel at a reckless speed, the suspect vehicle barrels through the stop sign at the intersection of Horatio St. and Munn St.



(ILLUSTRATION I)

27. In hot pursuit, Defendant Juarez-Aguilera travels through the stop sign at this intersection as well.

28. The two vehicles then cross back over Jennifer St. As they do, the suspect vehicle continues pulling further away from Defendant Juarez-Aguilera.

29. Continuing to increase their speed, on information and belief, the vehicles then approach the intersection of Munn St. and Belin St., again flying through the stop sign at the intersection, after passing a Neighborhood Watch sign, on information and belief.



(ILLUSTRATION J)

30. Traveling further, the suspect vehicle comes to the intersection of Munn St. and Serpentine St. While not controlled by a stop sign or other traffic-control device, there is a "Road Humps: 10 MPH" sign on the corner, again admonishing drivers to travel over the speed bumps at a slow rate of speed.



(ILLUSTRATION K)

31. After turning onto Serpentine St., the suspect vehicle rockets forward, greatly increasing its distance from Defendant Juarez-Aguilera's police vehicle.



(ILLUSTRATION L)

32. Snaking around Serpentine St. at a high rate of speed, the suspect vehicle does not stop at the stop sign at Serpentine and, on information and belief, Belin St.; instead, the suspect vehicle speeds on to Market St.



(ILLUSTRATION M)

33. Coming to the intersection at Serpentine and Market, the suspect vehicle flies over the railroad tracks; speeds through the stop sign; and zips down Market St.



(ILLUSTRATION N)

34. Once it hits Market St., the suspect vehicle takes off even further increasing its distance from Defendant Juarez-Aguilera's police vehicle.



(ILLUSTRATION O)

35. After speeding down Market St. a significant distance, the suspect vehicle approaches the major intersection of Market St. and Federal Rd. The traffic light facing the suspect vehicle as it approaches is red, indicating any vehicle traveling in the same direction as the suspect vehicle is required to stop.

36. As the suspect vehicle and Defendant Juarez-Aguilera approached Federal Rd., a Ford Explorer driven by Plaintiff is visible off to the left. The traffic light facing Plaintiff was green, indicating she had the right-of-way.



(ILLUSTRATION P)

37. The suspect vehicle blew through the red light at a high rate of speed, causing the Ford
    Explorer driven by Plaintiff to strike the suspect vehicle, causing a devastating collision
    between the two vehicles.



(ILLUSTRATIONS Q-R)

38. Both the suspect vehicle and Plaintiff's vehicle come to rest in front of the Federal Market
    grocery store, located at 1303 Federal Rd. At this point, it became aware that the vehicle
    was operated, on information and belief, by four juveniles who were taken into custody.

39. Defendant Juarez-Aguilera then observed Ms. Valadez slumped over into the passenger seat of the vehicle she was driving, the Ford Explorer. Defendant Juarez-Aguilera and Houston Police Department officers were able to get into Ms. Valadez's vehicle to assist her after tow truck drivers on scene assisted in opening the passenger door of Ms. Valadez's car.

40. Thereafter, Ms. Valadez was transported from the scene by Houston Fire/EMS to Ben Taub Hospital.



(ILLUSTRATION S)

41. The Houston Police Department investigated the accident, assigning Case No. 106386122 to the case. The Harris County District Attorney's Office, on information and belief, agreed to accept at least felony evading arrest charges.

42. Later that morning, Defendant Juarez-Aguilera learned that Ms. Valadez was in critical condition in the ICU (Intensive Care Unit) due to her injuries. Defendant Juarez-Aguilera conferred with Ms. Valadez's doctor to be updated on her medical condition, which was still critical at the time.

43. Only after returning to the Jacinto City Police Department later that morning did Defendant Juarez-Aguilera learn that the suspect vehicle had been reported stolen in the nearby city of Galena Park.

44. Ms. Valadez suffered incredibly severe injuries to her body due to this collision, as well as the destruction of the vehicle she was operating at the time the suspect vehicle ran the red light.

45. At all times relevant to this incident, Ms. Valadez was operating her motor vehicle in a reasonable and prudent manner, exercising ordinary care for her safety and the safety of others.





(ILLUSTRATIONS T-V)

# V.

## CAUSES OF ACTION

### COUNT ONE
### STATE-CREATED DANGER
**Violation of the Due Process Clause of the Fourteenth Amendment**
**Pursuant to 42 U.S.C. § 1983**
**Against Defendant Juarez-Aguilera**

46. Ms. Valadez repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

47. Defendant Juarez-Aguilera, acting under color of law, deprived Ms. Valadez of the rights, privileges, and substantive due process rights afforded her by the Fourteenth Amendment to the United States Constitution.

48. Accordingly, Ms. Valadez commences this action pursuant to 42 U.S.C. § 1983.

49. The state-created danger doctrine is recognized and well-established in other federal circuit courts of appeal; and the Fifth Circuit has "not categorically ruled out the doctrine" as applicable in a future case. *Fisher v. Moore*, 73 F.4th 367 (5th Cir. 2023).

50. Plaintiff advances a state-created danger doctrine claim here based on a good-faith determination that this argument is currently viable, as recognized by other circuits.

51. Alternatively, Plaintiff advances this claim to argue for a reasonable extension, modification, or reversal of existing doctrine, as well as to preserve the matter for further review by the appellate courts, if necessary.

52. As the Fifth Circuit delineated in *Fisher v. Moore*, the hypothetical elements of a state-created danger theory are present in truly salient fashion in the instant case.

53. In the instant case, Defendant Juarez-Aguilera undoubtedly "used his authority to create a dangerous environment for [Ms. Valadez]." Defendant Juarez-Aguilera's use of his police vehicle; the red and blue lights indicative of a law enforcement officer attempting to stop a vehicle or communicate to drivers and others that they are engaged in some form of law enforcement activity; his use of high speeds to attempt to affect the stop and/or arrest of the suspect vehicle; and chase of the suspect vehicle through a highly-populated, residential area, all created a dangerous environment for Ms. Valadez.

54. Moreover, Defendant Juarez-Aguilera's actions exhibited recklessness, and thus deliberate indifference to the plight of Ms. Valadez – and really, any other driver or pedestrian traversing this general area of the cities of Jacinto City and/or Houston. *Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023)(citing *Doe ex. rel. Magee v. Covington Cnty. Sch. Dist. ex. rel. Keys*, 675 F.3d 849, 865 (5th Cir. 2012)).

55. As noted in *Fisher*, Defendant Juarez-Aguilera furthermore used his authority to "create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 585 (5th Cir. 2001)). Here, but for refusing to cease the chase that ensued when Defendant Juarez-Aguilera attempted to pull the subject vehicle over for its taillight being out, Ms. Valadez would not have been in the situation where she sustained extraordinary injury from a vehicle fleeing the police over a highly inconsequential traffic allegation (here, the taillight being out).

56. Defendant caused Ms. Valadez to endure extraordinary pain and suffering by recklessly pursuing a vehicle – not yet confirmed to be stolen – for evading his attempted detention of the suspect vehicle, a third-degree, non-violent felony.

57. There is no incontrovertible evidence as to Defendant's knowledge that the vehicle was actually stolen at the time he pursued it through the neighborhood; however even if he had such information, the two crimes he might presumably be investigating or attempting to stop would be theft and/or unauthorized use of a motor vehicle, both of which would be state jail felony offenses in this instance. State jails felony are the lowest level felonies in the Texas Penal Code.

58.  These injuries were only caused by this reckless vehicle pursuit and not by any other means.


## COUNT TWO

**Violation of the Fourteenth Amendment Pursuant to 42 U.S.C. § 1983 Against Defendant Juarez-Aguilera**


59. Plaintiff incorporates by reference all of the foregoing and further alleges the following, pleading in the alternative:

60. Defendant Juarez-Aguilera's reckless pursuit of an absconding suspect vehicle – for whom he had, at best, reasonable suspicion for being involved in a low-level, non-violent felony

offense – deprived Ms. Valadez of her substantive due process rights under the Fourteenth Amendment to the United States Constitution.

61. The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law.

62. Plaintiff's life and liberty suffered deprivations by virtue of the severe injuries she received as the innocent victim of this wreck, caused by Defendant Juarez-Aguilera's giving chase to the suspect vehicle he saw with a taillight out.

63. Moreover, Plaintiff's property interest in her vehicle was obliterated as a consequence of the vehicle being destroyed by the impact of this collision.

64. Accordingly, Ms. Valadez seeks redress under 42 U.S.C. §1983 for the deprivation of her life, liberty, and property interests through the deliberate indifference shown through Defendant Juarez-Aguilera's reckless vehicle pursuit.

65. At all material times, Defendant Juarez-Aguilera acted under color of state law, as a peace officer with the City of Jacinto City, Texas Police Department.

66. It is clear that a constitutional violation was committed through the deliberate indifference to Ms. Valadez's life, liberty, and property rights, as enshrined by the Fourteenth Amendment, as a consequence of the collision borne from this police chase.


### COUNT THREE

***Monell Claim against* Defendant City of Jacinto City, TX**


67. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

68. The conduct of Defendant Juarez-Aguilera constituted recklessness and deliberate indifference to the safety of Ms. Valadez and all others on the road in the early hours of 10 August 2022.

69. At all material times, Defendant Juarez-Aguilera, in the capacity of his employment as a peace officer for the City of Jacinto City, TX, acted under color of state law.

70. Defendant Juarez-Aguilera was acting within the course and scope of his duties as a peace officer for the City of Jacinto City, TX when he began a reckless police chase through a crowded neighborhood and heavily traversed area in the vicinity of Market and Federal Roads. At all times relevant to this lawsuit, Defendant Juarez-Aguilera was clad in his Jacinto City Police Department-issued uniform.

71. Chief J.M. Ayala was and is the Defendant's policymaker for all matters related to the Jacinto City Police Department, having been delegated the policymaking authority by the City of Jacinto City, TX City Council.

72. Consequently, Defendant City of Jacinto City, TX had or ratified the following policies, customs, and/or practices in place when Defendant Juarez-Aguilera engaged in the reckless pursuit which caused her injuries and constitutional deprivations:

***a.*** *Policy No. 4.7, Pursuit of Fleeing Vehicles*

73. Chief Ayala and his command staff were all deliberately indifferent to the natural byproducts of the implementation of this policy, of which he was aware, authorized, ratified, accepted, exacerbated, and encouraged, instead of rectifying it and ensuring civilians were not hurt by it.

74. Chief Ayala became the Chief of the Department in April 2001, according to the Jacinto City website. *Available at* https://www.jacintocity-tx.gov/police-chief-joe-ayala/.

75. The policy was originally issued on 1 July 1999 and was revised the next year, on 10 May 2000, specifically. It is highly unlikely that over the twenty-one (21) years between Chief Ayala's swearing-in and the date of this horrendous collision, he did not become aware of and repeatedly ratify, on information and belief, this constitutionally violative pursuit policy.

76. It was clear that a constitutional violation was a very likely outcome of the ratification, adoption, and promotion of this policy.

77. Chief Ayala and his command staff knew or should have known that leaving the decision to "begin, responsibility for continuation, and method of pursuit rests primarily with the individual officer(s) involved" – without providing greater specificity about the circumstances under which a high-speed pursuit could be conducted – would invariably lead to situations like this, where a reckless pursuit is conducted over a minor traffic offense.

78. Moreover, the nebulous modifiers in the policy – e.g. "serious" felonies – and complete lack of reference to reasonable suspicion and whether it warrants engaging in the pursuit of a fleeing vehicle evidences the deliberate indifference in the promulgation and use of this policy.

79. This policy, *supra*, was actually known, constructively known, and/or ratified by City of Jacinto City, TX and its policymakers, including Chief Ayala, and was promulgated with deliberate indifference to Ms. Valadez's rights under the United States Constitution and

the rights of all others traveling on the roads in or near Jacinto City, TX. This policy made it highly likely that such constitutional violations as those previously described would occur, under color of state law.

80. The previously mentioned policy was a moving force of Ms. Valadez's constitutional deprivations and injuries, causing her to experience severe physical injuries and suffer damages.

## COUNT FOUR

**Negligent Hiring, Supervision, Training, or Retention of an Employee Pursuant to 42 U.S.C. §1983 Against Defendants J.M. Ayala and City of Jacinto City, TX**

81. Plaintiff incorporates by reference all of the foregoing and further alleges the following:

82. The elements of a cause of action for negligently hiring, supervising, training, or retaining and employee are the following:

   **1.**    The employer owed the plaintiff a legal duty to hire, supervise, train, or retain competent employees.

   **2.**    The employer breached that duty.

   **3.**    The employee committed a tort.

   **4.**    The employer's breach and the employee's tort proximately caused the plaintiff's injury.

83. As previously mentioned, the Jacinto City Police Department had a woefully inadequate vehicle pursuit policy, which is and has been deliberately indifferent to the rights of citizens on the road since its inception in 1999.

84. On information and belief, the police officers subject to Policy No. 4.7, *Pursuit of Fleeing Vehicles*, were not trained on whether they could engage in a pursuit without probable cause that a "serious" felony has been or is in the process of being committed, nor whether the policy permits pursuits where the officer only has arguable reasonable suspicion.

85. Defendant City of Jacinto City, TX undoubtedly owed Ms. Valadez and all of its other citizens a legal duty to hire, supervise, train, or retain competent employees, particularly those employed as peace officers.

86. Defendant City of Jacinto City, TX breached this by giving peace officers nearly complete autonomy on when and if they engaged in a vehicle pursuit, despite failing to provide

enough specificity to ensure that peace officers only engaged in pursuits for truly serious offenses.

87. Furthermore, the City of Jacinto City, TX and Defendant J.M. Ayala, individually, also failed to train and supervise its employees to the extent that it ensures its peace officers engage in vehicle pursuits only in circumstances where they have actual probable cause a serious felony offense has been committed, not merely arguable reasonable suspicion or a minor traffic offense.

88. Defendant City of Jacinto City's breach and Defendant Juarez-Aguilera's tort proximately caused Ms. Valadez's injuries on 10 August 2022.

## COUNT FIVE

## Cause of Action Under the Texas Tort Claims Act (TTCA) Against Defendant City of Jacinto City, TX

89. Plaintiff incorporates by reference all of the foregoing and further alleges the following, ONLY against Defendant City of Jacinto City, TX, not against Defendant Juarez-Aguilera:

90. The occurrence described in this complaint is the direct and proximate result of the reck- lessness of the employee of Defendant City of Jacinto City, TX, in one or more of the following respects:

a).     in initiating and engaging in a high-speed vehicle pursuit through a highly popu- lated neighborhood and area, at times traveling, on information and belief, in excess of twice the speed limit of the roads traveled;

b).     in failing to confirm that the vehicle suspected had in fact committed a "serious" felony and/or that the officer had actual probable cause or arguable reasonable suspicion that a "serious" felony offense – not merely a minor traffic offense – had been committed;

c).     in failing to yield the right of way to Plaintiff.

d).     failure to maintain a safe speed;

e).     failure to follow City of Jacinto City, TX Police Department *Pursuit of Fleeing Vehicles* policy;

91. At the time of this incident, the City of Jacinto City, TX Police Department's *Pursuit of Fleeing Vehicles* policy governed the actions of Officer Jose Juarez-Aguilera.

92. In this incident, Officer Jose Juarez-Aguilera violated the vehicle pursuit policy because the suspect vehicle did not present a clear and immediate threat to the safety of others prior to his initiation of the pursuit.

93. The *Pursuit of Fleeing Vehicles* policy mandates that termination of the policy occur when the following conditions are present:

> V.    **Pursuit Termination**
>
> A.    The decision to abandon a pursuit may be the most intelligent course of action. Officers must continually question whether the seriousness of the crime justifies continuation of the pursuit. A pursuit shall be terminated under any of the following circumstances:
>
> 1.    If, in the opinion of the pursuing officer or the Patrol Supervisor, there is a clear and unreasonable danger to the officer and/or other users of the roadway created by the pursuit that outweighs the necessity for immediate apprehension.
>
> 2.    The suspect(s) identity has been established to the point that later apprehension can be accomplished.
>
> 3.    The prevailing traffic, roadway, or environmental conditions indicate the futility of continued pursuit.
>
> 4.    The pursued vehicle's location is no longer known.
>
> 5.    The pursuing officer knows, or is reasonably certain, that the fleeing vehicle is operated by a juvenile and/or the offense constitutes a misdemeanor or a non-serious felony, for which deadly force would not be used.
>
> 6.    When the pursuit does not comply with the conditions of Section I (A) of this policy.
>
> B.    No officer shall ridicule, harass, or make any negative comments concerning another officer's decision to terminate a pursuit.

94. Section V(A)(5) of the policy required cessation of the pursuit in this precise circumstance: when the alleged offense constituted a misdemeanor (a taillight out) or a non-serious felony (either unauthorized use of a motor vehicle (UUMV) and/or theft), as deadly force would not be used in response to such alleged offenses.

95. Defendant City of Jacinto City, TX has had actual notice of Ms. Valadez's physical injuries and property damage since the date of the occurrence the subject of this lawsuit, 10 August 2022. C.P.R.C. §101.101(c).

96. The City of Jacinto City, TX negligently entrusted the decision whether to engage in the vehicle pursuit to its employee officer, Jose Juarez-Aguilera. *See City of Gatesville v. Truelove*, 546 S.W.2d 79, 84 (Tex. App. – Waco 1976, no writ.); *See Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002)(citing *Gonzalez v. City of El Paso*, 978 S.W.2d 619, 623 (Tex. App. — El Paso 1998, no pet.).

*97.* The City of Jacinto City, TX is responsible for the conduct of its employee based on the doctrine of *respondeat superior.* At all relevant times, Officer Juarez-Aguilera was an agent and employee of Defendant City of Jacinto City, TX and was acting within the course and scope of his employment. He would be personally liable to Plaintiff under Texas law.

98. Plaintiff's injuries were proximately caused by Defendant City of Jacinto City, TX officer's careless, reckless, and deliberately indifferent disregard of his duty to exercise reasonable care in the engagement of a vehicle pursuit. The officer employee breached that duty of care in his reckless pursuit of this suspect vehicle.

99. Officer Jose Juarez-Aguilera's vehicle pursuit of this suspect vehicle was a substantial factor in causing injury to Ms. Valadez and without which the injury would not have occurred.

100. The injury to Plaintiff was foreseeable.

101. A reasonable police officer could have foreseen that driving in a high-speed chase through a crowded residential neighborhood and on heavily traveled streets could lead to a collision like the one that occurred in this incident.

102. "The Texas Supreme Court has agreed that a peace officer's flawed execution of policy gives rise to a colorable negligence claim." *City of El Paso v. Cangialosi*, 632 S.W.3d 611, 622 (Tex. App. — El Paso Aug. 31, 2020)(citing *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 928 (Tex. 2015). *See  State v. Terrell,* 588 S.W.2d 784, 788 (Tex. 1979)("[I]f…an officer or employee acts negligently in carrying out that policy, governmental liability may exist…"); *See also Maspero v. City of San Antonio*, No. 04-18-00286-CV, 2019 WL 4044036, at *3 (Tex. App. — San Antonio Aug. 28, 2019, pet. filed)(mem. op., not designated for publication)(relying on the police department's accident report that listed "fleeing or evading police" as some evidence supporting the cause-in-fact requirement).

103. Officer Juarez-Aguilera was not conducting this pursuit in good faith, as it was undertaken with conscious indifference and reckless disregard for the safety of others. *See* Tex. Civ. Prac. & Rem. Code Ann §101.0522.

104. Chapter 9, Sec. 4(B)(3) of the Jacinto City, TX Code of Ordinances prescribes the following driver responsibilities for a Jacinto City, TX emergency vehicle, to which Plaintiff alleges Officer Juarez-Aguilera did not adhere:

(3) Driver Responsibilities

The foregoing provisions shall not relieve the driver of an authorized police or fire emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others.

105.    The City of Jacinto City, TX is responsible for the injuries and damages sustained by Plaintiff based on the Texas Tort Claims Act.  C.P.R.C. §101.021.

106.    A governmental unit is liable for damages with arise from the operation or use of a motor vehicle under the facts that exist in this case.



(ILLUSTRATION W)

## **Qualified Immunity**

107.    The Fifth Circuit, relying on recent historical scholarship, has recently recognized that Section 1983 as originally enacted by the United States Congress contained a "Notwithstanding Clause" that "appears to abrogate common-law immunities" such as qualified immunity, but the Reviser of Federal Statutes made an unauthorized alteration to that language  by omitting the Notwithstanding Clause, which was compounded when the various revised statues were later published in the first United States Code and has never been corrected. *See Hankins v. Wheeler*, -- F.4th --, 2024 WL 3610109, at *3 (5th Cir. Aug. 1, 2024) (citing *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) (Willet, J., concurring) and Alexander Reinert, Qualified Immunity's Flawed Foundation, 111 Calif. L. Rev. 201, 207–08 (2023)).

108. It is likely that the version of Section 1983 codified into the United States Code is wrong, and that the version actually enacted by Congress abrogated all common-law immunities in their entirety, which would include qualified immunity. See *Rogers*, 63 F.4th at 980 (Willet, J., concurring); Reinert, 111 Calif. L. Rev. at 207-08.

109. Plaintiffs assert that qualified immunity cannot be asserted as a defense because all common-law immunities have been abrogated, as based on the version of Section 1983 that was actually enacted by Congress.

110. Additionally, as of the date of this pleading, the United States Supreme Court has docketed a petition for discretionary review from the Fifth Circuit decision in *Villarreal v. City of Laredo, Tex.*, 94 F.4th 374 (5th Cir. 2024). In Villareal, Judge Willett authored a dissent joined by five other judges recognizing that courts have improperly "engrafted on to § 1983 assorted made-up defenses that cannot possibly be squared with the statutory text" including the "clearly established law" test, which does not square with the text of Section 1983. Id. at 408 & n. 14.

111. Plaintiffs assert that the "clearly established law" tested does not apply because it is inconsistent with the plain text of Section 1983.

112. Plaintiff advances these arguments related to qualified immunity here based on a good-faith determination that these arguments are viable as recognized by scholars and various Fifth Circuit judges.

113. Alternatively, Plaintiffs advance these claims to argue for a reasonable extension, modification, or reversal of existing doctrine, as well as to preserve the matter for further review by the appellate courts, if necessary.

# VI.
# DAMAGES

114. Ms. Valadez repeats and re-alleges each and every allegation contained in the above paragraphs as though fully delineated below.

115. Plaintiff seeks monetary relief and for judgment of all the other relief to which she deems herself entitled.

116. Ms. Valadez' injuries were foreseeable and directly and proximately caused by the deliberate indifference exhibited during the pursuit of this suspect vehicle.

117. Ms. Valadez is thus entitled to recover all actual damages allowed by law.

118. As a direct and proximate result of the occurrence underlying this lawsuit, Ms. Valadez suffered:

119.     Physical injuries, including impairment;
120.     Physical pain and suffering;
121.     Deprivations of her liberty;
122.     Permanent physical disfigurement;
123.     Emotional distress, torment, and mental anguish; and
124.     Reasonable and necessary medical care to treat her injuries in the past and future.

125. Plaintiff seeks to recover reasonable attorney's fees and costs of court, and hereby requests the award of punitive damages, pursuant to 42 U.S.C. § 1983 and § 1988.

# VII.
# ATTORNEY'S FEES

126. If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under 42 U.S.C. §1988.

# VIII.
# JURY DEMAND

127. Plaintiff respectfully requests a jury trial in this matter.

# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that judgment be rendered against all Defendants, for an amount in excess of the jurisdictional minimum of this Court.

Plaintiff further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully Submitted,

**WEBB CASON & MANNING, P.C.**
710 Mesquite Street
Corpus Christi, Texas 78401
Telephone:     (361) 887-1031
Facsimile:     (361) 887-0903

By: */s/ Matthew S. Manning*
MATTHEW S. MANNING
State Bar No.: 24075847
Southern Dist. ID No. 3504172
General Correspondence Email:
 matt@wcctxlaw.com

**\* E-Service Email: service@wcctxlaw.com**
**\* E-Service is only accepted at the above**
**designated e-service e-mail address.**

ATTORNEY FOR PLAINTIFF
CLAUDIA VALADEZ